# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2782

_____

United States of America,

      Plaintiff - Appellee,

v.

Brian Brown, also known as Brian
Lee Brown,

      Defendant - Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Western District of Arkansas.

_____

Submitted: February 10, 2003

Filed: June 9, 2003

_____

Before HANSEN,[*] Chief Judge, LOKEN and SMITH, Circuit Judges.

_____

LOKEN, Chief Judge.

    A jury convicted Brian Brown of kidnaping and aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 1201(a)(1) and 2241(c). The district court[1]

_____

[*]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. The Honorable James B. Loken became Chief Judge on April 1, 2003.

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

sentenced him to concurrent terms of life in prison. On appeal, Brown argues that the district court violated the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1, and the Free Exercise Clause of the First Amendment by granting the government's motion for an involuntary blood sample for DNA testing; that the verdict form constructively amended the aggravated sexual abuse count in the indictment; that the government's proof at trial created two material variances from the indictment; and that his conduct fell within the parent exception to the federal kidnaping offense. He also challenges sentencing enhancements under U.S.S.G. §§ 2A3.1(b)(3)(A) and (5). We affirm.

## I. Background

While visiting friends in Kansas, truck driver Brown offered to take the family's ten-year-old daughter, Jane Doe,[2] on an overnight trip to Texas while he made a delivery. The child's mother signed a note giving Jane permission to go with Brown to Dallas and return the next day. Brown and Jane left Kansas and arrived in Dallas that night. While sleeping in the truck, Jane awakened to find Brown putting his hands into her pants. Jane asked Brown to take her home. The next day, Brown left Dallas heading north but instead went to a rural campground in Arkansas, where he sexually assaulted Jane the following day. On the third day, a grocery store owner became suspicious and contacted police. Though Jane told the investigating officer she was Brown's daughter, as Brown had instructed, the officer contacted Kansas police and learned that Brown was driving a stolen truck and had kidnaped a girl. When officers arrested Brown, a distraught Jane reported that Brown had sexually assaulted her. A medical examination revealed bruises on her face and body, a vaginal tear, and semen in the crotch of her pants.

---

[2]To protect the identity of the minor, we will refer to her as Jane Doe.

Following Brown's indictment, the government obtained a search warrant and moved for production of a sample of his blood for DNA testing. Brown objected, arguing that an involuntary blood sample would violate his right to religious freedom as a Jehovah's Witness under RFRA and the Free Exercise Clause. The district court overruled Brown's objection after an evidentiary hearing. At trial, an Arkansas State Crime Lab employee testified, without objection, that Brown's blood sample had been tested, his DNA matched that of the semen found on Jane's clothing, and the random probabilities of such a match are 1 in 6,369. The jury convicted Brown on both counts. The district court denied his post-trial motions and sentenced him to concurrent life terms. Brown appeals his conviction and sentence.

## II. The Blood Sample Issue

On appeal, Brown renews his contention that the involuntary blood sample violated his rights under RFRA and the Free Exercise Clause. But he challenges only the district court's pretrial order granting the government's motion for production of a blood sample. He never moved to suppress any evidence that might result from the blood sample, and at trial he did not object to the state crime lab expert's testimony explaining the results of the DNA testing. Admission of that testimony, which we review for plain error, was the only aspect of this issue that had an impact on Brown's conviction. The district court granted the motion for production after hearing testimony from Brown regarding his religious beliefs,[3] from an Elder and an Overseer of a local Jehovah's Witness congregation contradicting Brown's testimony, and from an FBI agent explaining the importance of a blood sample in obtaining accurate DNA

---

[3]To support his position, Brown submitted an article from the October 15, 2002 edition of The Watchtower, a Jehovah's Witness publication, which stated that "tests involving an individual's own blood are not so clearly in conflict with God's stated principles" as is, for example, donating blood. Thus, Brown failed to show that forbidding blood samples is a "central tenet" of the Jehovah's Witness religion. See Weir v. Nix, 114 F.3d 817, 820 (8th Cir. 1997).

evidence.[4]  After this careful consideration of the RFRA and First Amendment issues before trial, the court did not commit plain error in admitting trial testimony explaining the results of the DNA testing conducted on Brown's blood sample.

## II.  The Constructive Amendment Issue

Count II charged Brown with aggravated sexual abuse of a child in violation of 18 U.S.C. § 2241(c).  The statute prohibits "cross[ing] a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years . . . ."  The district court quoted the statute and then instructed the jury that the government must prove its four essential elements beyond a reasonable doubt to convict Brown of the crime charged in Count II.  However, in the verdict form for Count II, the jury found Brown guilty of "transporting a minor in interstate commerce with the intent to engage in a sexual act with a minor," language which more closely tracks the prohibition in 18 U.S.C. § 2423(b) than the language of 18 U.S.C. § 2241(c).  Brown argues this verdict form constructively amended the indictment.

Jury instructions constructively amend if they allow the jury to convict the defendant of a different offense than the one alleged in the indictment.  United States v. Barrios-Perez, 317 F.3d 777, 779 (8th Cir. 2003).  But we are aware of no case in which a verdict form by itself was held to constitute a constructive amendment.  Here, the jury instructions accurately tracked the language of § 2241(c) and Count II.  Although the verdict form found Brown guilty of intent to engage in a sexual act with

---

[4]RFRA provides that exercise of a person's religion may be substantially burdened "in furtherance of a compelling governmental interest" that is furthered by "the least restrictive means."  42 U.S.C. § 2000bb-1(b).  At least two circuits have held that the government's strong interest in obtaining DNA evidence from blood samples overrides the Fourth Amendment interests of inmates objecting to mandatory blood samples.  See Roe v. Marcotte, 193 F.3d 72, 79 (2d Cir. 1999); Jones v. Murray, 962 F.2d 302, 307 (4th Cir.), cert. denied, 506 U.S. 977 (1992).

"a minor," the instructions repeatedly told the jury it must find that the victim was less than 12 years old at the time of the offense. Thus, the jury instructions and verdict form viewed as a whole did not allow the jury to convict Brown of a different offense than Count II charged. There was no constructive amendment.

### III.  The Material Variance Issues

**A.  Kidnaping "for Ransom or Reward or Otherwise."**  Brown was convicted of violating the federal kidnaping statute, 18 U.S.C. § 1201(a)(1), which proscribes a kidnaping in interstate commerce where the victim is held for "ransom or reward *or* otherwise." Count I of the indictment charged him with kidnaping and holding Jane Doe for "ransom, reward *and* otherwise." The district court instructed the jury in the language of the statute -- you must find that Brown "held the person named in the indictment for ransom, reward *or* other benefit or reason." Brown raises two related issues based upon this difference in language. First, he argues the evidence was insufficient to convict because the government failed to prove he held Jane for ransom or reward. Alternatively, he argues that use of the word "and" in the indictment created a variance between the indictment and the proof at trial.

It is well established that an indictment may be phrased in the conjunctive, when the statute and jury instructions are phrased in the disjunctive, without creating a constructive amendment of the indictment or a material variance in the proof. See Barrios-Perez, 317 F.3d at 779-80 (no constructive amendment); United States v. Atchison, 524 F.2d 367, 368, 370-71 (7th Cir. 1975) (no material variance). Indeed, we have observed that it is "bad pleading" if an indictment alleges alternative statutory purposes in the disjunctive. Bram v. United States, 302 F.2d 58, 60 (8th Cir. 1962) (quotation omitted). Thus, the indictment and the jury instructions were properly phrased. Brown's separate attack on the sufficiency of the evidence is without merit because it is well-settled that he violated § 1201(a) by kidnaping and

holding Jane Doe for a non-pecuniary purpose, whether or not he also held her for ransom or reward.  See United States v. Healy, 376 U.S. 75, 81-82 (1964).

**B. Traveling in Interstate Commerce.** Brown argues that a material variance occurred regarding the interstate commerce element of the kidnaping count because the indictment alleged that he kidnaped Jane from "Texas to Arkansas," but the trial evidence showed that he took her from Texas to Oklahoma and then from Oklahoma to Arkansas.  We doubt this is even a slight variance, because the allegation that Brown traveled from Texas to Arkansas reasonably encompassed a route passing through Oklahoma.  But in any event, any variance was not material because the indictment "fully and fairly apprised [Brown] of the charges he . . . must meet at trial."  United States v. Begnaud, 783 F.2d 144, 148 (8th Cir. 1986).

## IV.  The "Parent" Exception to 18 U.S.C. § 1201(a)

The federal kidnaping statute includes an exception for actions "in the case of a minor by the parent thereof."  18 U.S.C. § 1201(a).[5]  Brown argues the district court erred in denying his post trial motions because he had temporary custody of Jane with her parent's written permission and therefore his conduct came within the exception. Though any parent-by-consent defense is obviously fact intensive, Brown did not request a jury instruction on this issue nor object when such an instruction was not given.  Thus, we review this issue for plain error.

We have construed the term "parent" in the statutory exception as potentially including "anyone who stands in a position equivalent to that of a parent," as well as a child's biological parents.  Miller v. United States, 123 F.2d 715, 717 (8th Cir. 1941), rev'd on other grounds, 317 U.S. 192 (1942); accord United States v. Floyd,

_____

[5]For the history and purpose of this exception, see United States v. Boettcher, 780 F.2d 435, 436-37 (4th Cir. 1985).

81 F.3d 1517, 1523 (10th Cir.) ("a surrogate parent is exempt from prosecution under section 1201"), cert. denied, 519 U.S. 851 (1996). Though Jane's mother gave Brown limited consent to take the child on an overnight trip to Texas, Brown abducted Jane to Arkansas after she asked to be taken home, sexually abused her, and held her against her will for days beyond her mother's consent. By no stretch of the imagination was this the conduct of a surrogate parent. "[E]ven under the broadest and most latitudinarian definition or understanding of the term 'parent,' [Brown's] relationship to this minor at the time of the offense cannot be so characterized." Miller, 123 F.2d at 718. There was no plain error.

## V. Sentencing Issues

**A. Two-Level Increase for Custody of the Victim.** The district court increased the base offense level for criminal sexual abuse by two levels because Jane was in Brown's "custody, care, or supervisory control." U.S.S.G. § 2A3.1(b)(3)(A). Brown argues the increase was clearly erroneous. This enhancement applies "whenever the victim is entrusted to the defendant, whether temporarily or permanently," because such a custodial relationship "represents the potential for greater and prolonged psychological damage." U.S.S.G. § 2A3.1, comment. (n.2 and backg'd). Here, Jane's parents entrusted her to Brown, as a friend of the family, creating a relationship of temporary custody and care based upon trust. When he abused that trust by abducting and sexually abusing the child, his sexual abuse offense involved precisely the kind of potential for psychological damage contemplated by this enhancement. See United States v. Crane, 965 F.2d 586, 587 (8th Cir. 1992). There was no clear error.

**B. Four-Level Increase for Abducting the Victim.** The district court further increased the base offense level for criminal sexual abuse by four levels because Jane Doe "was abducted." U.S.S.G. § 2A3.1(b)(5). Brown argues this was clear error because he had permission to take Jane to Texas. But the abduction occurred when

Jane asked to be taken home, consistent with her mother's consent, and Brown instead took her to an Arkansas campground for the purpose of sexual assault. See United States v. Kills in Water, 293 F.3d 432, 437 (8th Cir. 2002).

Brown further argues that enhancing his base offense level four levels for the abduction under § 2A3.1(b)(5), and four additional levels for the use of force under U.S.S.G. § 2A3.1(b)(1), was impermissible double counting. We disagree. Double counting is permissible when the Sentencing Commission intended that two provisions both apply and they address "conceptually separate notions relating to sentencing." United States v. Rohwedder, 243 F.3d 423, 427 (8th Cir. 2001). In United States v. Saknikent, 30 F.3d 1012, 1013 (8th Cir. 1994), a case in which the victim was abducted and then forcibly raped, we upheld the imposition of both these enhancements. Likewise, in this case, Brown forcibly abducted Jane to Arkansas, thereby increasing the likelihood of sexual assault, and then punched her in the face and held her tightly when she tried to resist his sexual abuse, increasing the severity of the assault. No impermissible double counting occurred when the district court imposed both enhancements to punish these distinct offense characteristics.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-