United States Court of Appeals
Fifth Circuit

**F I L E D**

November 21, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 05-60419

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,
Cross-Appellant,**

**versus**

**MACEO SIMMONS,**

**Defendant-Appellant,
Cross-Appellee.**

**Appeals from the United States District Court
for the Southern District of Mississippi
(3:04-CR-132BN)**

Before BARKSDALE, BENAVIDES and OWEN, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Convicted of sexual assault under color of law, involving aggravated sexual abuse, in violation of 18 U.S.C. § 242, Maceo Simmons contests primarily the admission both of Government expert-witness testimony concerning sexual-assault victims and of Simmons' prior state-trial testimony; and the sufficiency of the evidence for his conviction. The Government challenges: the district court's refusal to impose a two-level enhancement under Guidelines § 2A3.1(b)(3)(A), applicable if the victim was "in the custody, care, or supervisory control of the defendant"; and the reasonableness of Simmons' sentence, pursuant to *United States v.*

*Booker*, 543 U.S. 220 (2005) (requiring, *inter alia*, "reasonableness" review of post-*Booker* sentences to be guided by the factors stated in 18 U.S.C. § 3553(a)). **CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.**

I.

In September 1999, Simmons and Thomas Catchings, both Jackson Police Department (JPD) officers, assisted another officer during the stop of an automobile containing 19-year-old passenger Syreeta Robinson and her boyfriend, Towaski Bell. After discovering marijuana in Robinson's possession, Simmons confiscated it, arrested and handcuffed her, and placed her in the back of his police vehicle. Bell, who was arrested for possessing marijuana and making false statements to a police officer, was placed in the back of Catchings' police vehicle. Before leaving the scene, Simmons told Catchings that Robinson "wanted to have sex" with Simmons.

Simmons and Catchings proceeded in their police vehicles to the police station, where Simmons waited in his vehicle with Robinson while Catchings took Bell inside for booking. After Catchings emerged from the police station, Simmons radioed him and asked him to follow Simmons' police vehicle. After departing from the police station, Simmons stopped his vehicle, removed Robinson's handcuffs, and moved her to the front seat of his police vehicle.

2

Next, he drove to an unlit, isolated area. Catchings followed and, according to his testimony, parked his police vehicle in order to act as a lookout while Simmons had sex with Robinson. Simmons forced Robinson to perform oral sex twice, and sexually assaulted her vaginally and anally. Robinson testified this activity was against her will.

Robinson, who was sobbing, was driven home by Catchings. He warned her not to tell anyone about the incident. Nevertheless, shortly after reaching home, Robinson told her boyfriend's mother and a friend about the night's events. Several days later, Robinson visited a rape-crisis center. But, fearing possible repercussions from the police, Robinson did not report the sexual assault until October 2000, approximately a year after the incident.

In November 2001, Simmons and Catchings were jointly tried in Mississippi state court for sexual battery and conspiracy to commit sexual battery. Simmons testified, denying having sex with Robinson. Although both men were acquitted, Simmons was terminated by the JPD in 2002 because of the incident with Robinson.

Simmons later became a police officer at Fort Hood, Texas. Two of his fellow officers there testified Simmons told them he had sex with a woman on, and in, his police vehicle while another officer was present, which resulted in Simmons' termination by the JPD.

3

In September 2004, a federal grand jury indicted Simmons on one count of sexual assault under color of law, in violation of 18 U.S.C. § 242, and one count of possession of a firearm while in furtherance thereof, in violation of 18 U.S.C. § 924(c)(1)(A)(i). In March 2005, Simmons was found guilty of the sexual-assault charge, the jury finding the offense involved aggravated sexual abuse resulting in bodily injury to the victim. He was acquitted on the firearm charge.

Simmons was sentenced, *inter alia*, to 240 months in prison. In imposing sentence, the district court sustained Simmons' objection to Guidelines § 2A3.1(b)(3)(A)'s two-level "custody" enhancement and, because of Simmons' age, imposed a sentence 84 months below the low end of the Guidelines sentencing range calculated by the district court.

## II.

Simmons' claims fail. The Government's challenge to the sentence succeeds for the denial of the "custody" enhancement. Accordingly, because we remand for resentencing, we do *not* decide the Government's claim that the imposed sentence was *not* reasonable.

### A.

Simmons presents the following contentions: (1) the evidence was insufficient for his conviction; (2) a Government expert witness should not have been permitted to testify about rape-victim

conduct; (3) admitting excerpts of his state-trial testimony violated Federal Rule of Evidence 404(b) (barring admission of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith), as well as the doctrine of collateral estoppel; (4) admitting evidence he violated police procedures by failing to log seized marijuana also violated Rule 404(b); (5) the Government's use of the word "kidnap" during closing argument denied him a fair trial; and (6) the court erred by refusing to instruct the jury on Simmons' state-court acquittal.

## 1.

Simmons maintains the evidence was insufficient because the Government produced no physical or medical evidence due to the sexual assault's not being reported for more than a year after the incident; and Robinson's testimonial inconsistencies undermined her credibility. For these reasons, and because, according to Simmons, no evidence showed he used force or Robinson experienced pain, Simmons claims the evidence was insufficient to support his aggravated-sexual-abuse conviction. At the close of both the Government's case-in-chief and all the evidence, Simmons moved for judgment of acquittal on these grounds, pursuant to Federal Rule of Criminal Procedure 29(a).

The denial of such a motion is reviewed *de novo*. ***United States v. Meyers***, 104 F.3d 76, 78 (5th Cir.), *cert. denied*, 520

5

U.S. 1218 (1997). Simmons' having timely moved for such judgment, the usual standard of review is employed: the verdict will be affirmed "if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt". *United States v. Delgado*, 256 F.3d 264, 273 (5th Cir. 2001). As is more than well established for this review, we evaluate neither the weight of the evidence nor the credibility of the witnesses. *Id.* That is for the jury. *E.g.*, *United States v. Holmes*, 406 F.3d 337, 351 (5th Cir.) (the jury "retains the sole authority to weigh conflicting evidence and evaluate the credibility of witnesses") (internal quotations omitted), *cert. denied*, 126 S.Ct. 375 (2005). All the evidence and reasonable inferences are viewed in the light most favorable to the verdict. *E.g.*, *United States v. Carillo-Morales*, 27 F.3d 1054, 1064 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178 (1995); *United States v. Marshall*, 762 F.2d 419, 423 (5th Cir. 1985) (in viewing *all* of the evidence, we do not ask whether it was properly admitted).

a.

Simmons' challenges to the lack of physical and medical evidence of the sexual assault and to Robinson's credibility are unavailing. Nothing in 18 U.S.C. § 242 or § 2241(a) requires such evidence. Conviction under § 242 is proper when, acting under color of law, a person willfully deprives another of a federal right. A § 242 offense involves "aggravated sexual abuse" when the

6

offender "knowingly causes another person to engage in a sexual act" either by (1) "using force against that other person", or (2) "threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping". 18 U.S.C. § 2241(a). The evidence showing Simmons deprived Robinson of federal rights and caused her to engage in sexual acts through force consisted not merely of Robinson's testimony, but included Simmons' statements and the testimony of numerous other witnesses, including Catchings. Simmons' challenges to Robinson's credibility, and to the sufficiency of the evidence in general, overlook this abundant corroborating evidence.

Catchings testified: then a JPD officer, he acted as a "lookout" while Simmons had sex with Robinson, and Simmons invited him to have sex with her. Robinson's boyfriend's mother and Robinson's friend testified Robinson telephoned them in the early morning hours following the sexual assault, distraught over the incident. Two others confirmed Robinson visited a rape-crisis center a few days later. The center's director testified Robinson appeared "traumatized". Although Simmons did not testify, excerpts of his prior state-court trial testimony were admitted and shown to be false by JPD records. Finally, Simmons' state-court testimony denying having had sex with Robinson was contradicted by the two Fort Hood Police Officers' testimony that Simmons bragged about

7

having had sex with a woman in, or on the back of, his police vehicle, and about having been terminated by the JPD as a result.

"[A] defendant's exculpatory statements which are shown by other evidence to be false may give rise to an inference of consciousness of guilt". *United States v. Villarreal*, 324 F.3d 319, 325 (5th Cir. 2003). Evidence of the falsity of Simmons' prior statements, in conjunction with Robinson's testimony and the testimony of the Fort Hood Police Officers and other witnesses, was sufficient for a reasonable jury to conclude Simmons sexually assaulted Robinson.

b.

The evidence was also sufficient to prove the assault involved "aggravated sexual abuse", in violation of 18 U.S.C. § 2241(a). As discussed *supra*, such abuse is to "knowingly cause[] another person to engage in a sexual act (1) by using force against that other person[], or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping" when the person is in custody. *Id.*

"A defendant uses force within the meaning of § 2241 when he employs restraint sufficient to prevent the victim from escaping the sexual conduct." *United States v. Lucas*, 157 F.3d 998, 1002 (5th Cir. 1998). Such force can be "implied from a disparity in size and coercive power between the defendant and his victim". *Id.*

8

Robinson testified: Simmons forced her to perform oral sex by pulling her head; she was unable to avoid doing so because of "the pressure he had on [her] neck"; and she was unable to escape Simmons' penetrating her anally and vaginally because he pinned her between his body and his police vehicle. *See* **Lucas**, 157 F.3d at 1002 n.9 (defendant's "pressing the victim against a table and thereby blocking her means of egress suffices to constitute force within the meaning of § 2241").

Added to the corroborating testimony discussed *supra* (including Catching's testimony he served as a "lookout"), this evidence is sufficient for a reasonable jury to find beyond a reasonable doubt that Simmons committed sexual assault involving aggravated sexual abuse. Accordingly, the evidence was sufficient for conviction.

2.

Simmons challenges the expert testimony of Dr. Louise Fitzgerald being permitted. Admission of such testimony is reviewed under the following abuse of discretion standard: "District courts enjoy *wide latitude* in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will *not* be disturbed on appeal *unless manifestly erroneous.*" **United States v. Tucker**, 345 F.3d 320, 326 (5th Cir. 2003) (quoting **Watkins v. Telsmith, Inc.**, 121 F.3d 984, 988 (5th Cir. 1997)) (emphasis added).

9

Of course, even if the court erred in allowing the testimony, its ruling will *not* be disturbed unless the error was harmful, affecting a substantial right of the complaining party. *E.g.*, *Bocanegra v. Vicmar Servs.*, 320 F.3d 581, 584 (5th Cir.), *cert. denied*, 540 U.S. 825 (2003). *See* FED. R. EVID. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected ...."). "In the criminal context, in assessing whether an error affected a 'substantial right' of a defendant, the necessary inquiry is 'whether the trier of fact would have found the defendant guilty beyond a reasonable doubt with[out] the [challenged] evidence ....'" *Tucker*, 345 F.3d at 326-27 (quoting *United States v. Roberts*, 887 F.2d 534, 536 (5th Cir. 1989)). Because the admission of the expert testimony did *not* constitute manifest error, we do *not* reach the harmless-error inquiry.

a.

Simmons contends Dr. Fitzgerald's testimony failed to satisfy the requirements of *Daubert v. Dow Pharmaceuticals*, 509 U.S. 579 (1993). *Daubert* held: when assessing the admissibility of expert testimony, trial courts must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue". *Id.* at 592. "[C]onfident that federal judges possess the capacity to undertake this review", *Daubert* nevertheless provided

10

guiding factors it described as neither exhaustive nor definitive. *Id.* at 593. They include: (1) whether the theory or technique underlying the expert's testimony has been tested; (2) whether it has been subjected to the rigors of peer review and publication; (3) whether it has any known rate of error and standards for controlling such error; and (4) whether the theory or technique has attained "general acceptance" within the relevant expert community. *Id.* at 593-94; *see also* FED. R. EVID. 702 (amended on 17 April 2000, consistent with the Supreme Court's decisions in *Daubert* and *Kumho Tire Co.*, 526 U.S. 137 (1999), to state district courts' role in assessing the reliability and helpfulness of expert testimony).

Dr. Fitzgerald was awarded a Ph.D. in psychology in 1979. At the time of trial, she was a licensed psychologist and a university professor of psychology, specializing in sexual violence and sexual victimization. Simmons objected to Dr. Fitzgerald's expert qualification and testimony because: she had *not* conducted research on memory; her research was founded on unreliable data and methodology; and her opinions went to the ultimate credibility of Robinson, the victim. The district court overruled the objection, reasoning that the testimony would be sufficiently reliable and helpful. It instructed the jury it could credit or discredit expert testimony as it could any other testimony.

Simmons claims the testimony should not have been admitted under *Daubert* because it relied on scientifically suspect

11

methodology.  Noting that Dr. Fitzgerald's indicia of rape-victim behavior (*e.g.*, non-reporting to police and feelings of shame, humiliation, and self-blame) were developed for therapeutic, rather than forensic, purposes, Simmons contends the testimony fails to satisfy the first and third *Daubert* factors: empirical validity and ascertainability of error rate.  In other words, according to Simmons, research on rape necessarily is biased in favor of believing purported victims; to develop indicia of rape-victim behavior, researchers must assume, as a starting premise, the veracity of their subjects, even though there is no way to verify the percentage of subjects actually raped.  Therefore, Simmons asserts: due to this inherent limitation, no empirically valid or reliable forensic diagnostic techniques can be developed, only therapeutic tools.

Obviously, these are inherent limitations for such research. Nevertheless, expert testimony drawing on it is *not* thereby proscribed by *Daubert*.  *See Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1297 (8th Cir. 1997) (recognizing inherent methodological limitations in all social-science research, particularly sexual-harassment research; nevertheless, holding such expert testimony admissible), *cert. denied*, 524 U.S. 953 (1998). First, as a general matter, "[t]o show that expert testimony is reliable ... the government need not satisfy each *Daubert* factor". *Hicks*, 389 F.3d at 525 (5th Cir. 2004).  Instead, as *Daubert*

12

emphasized, the trial court's "gatekeeping" function is "a *flexible one*". 509 U.S. at 594-95 (emphasis added). In fact, our court has held expert testimony admissible even though multiple **Daubert** factors were *not* satisfied. *See, e.g.*, **United States v. Norris**, 217 F.3d 262, 269-71 (5th Cir. 2000) (testimony admissible under **Daubert** even though "no error rate was known" and "no independent validation" of the expert's testing had occurred).

Second, naturally occurring circumstances, such as the social stigma attached to rape, may preclude ideal experimental conditions and controls. *See, e.g.*, **Jenson**, 130 F.3d at 1297 (noting the necessarily diminished methodological precision of "soft" social sciences, particularly in areas involving sexual victimization). In such instances, other indicia of reliability are considered under **Daubert**, including professional experience, education, training, and observations. *See*, *e.g.*, **Pipitone v. Biomatrix, Inc.**, 288 F.3d 239, 247 (5th Cir. 2002) (finding expert's testimony reliable under **Daubert** where "based mainly on his personal observations, professional experience, education and training"). Because there are areas of expertise, such as the "social sciences in which the research, theories and opinions cannot have the exactness of hard science methodologies", **Jenson**, 130 F.3d at 1297, trial judges are given broad discretion to determine "whether **Daubert**'s specific factors are, or are not, reasonable measures of

reliability in a particular case". *Kumho Tire Co.*, 526 U.S. at 153.

Third, admission of Dr. Fitzgerald's testimony is consistent with the holdings of other circuits. *See e.g.*, *Beauchamp v. City of Noblesville*, 320 F.3d 733, 745 (7th Cir. 2003) (expert's citing rape research to explain victim's "failure to immediately notify the police that she had been raped" and her "inability to recall the details of the crime clearly" could "be consistent with that of a person who was raped"); *United States v. Smith*, 1998 WL 136564, at *1-2 (6th Cir. 19 March 1998) (unpublished) (admitting psychologist's testimony that "she was familiar with reactions of women who have been victims of rape or sexual assault and that women often do not report the incidents immediately" to rebut defendant's assertion that alleged victims "were unreliable because they did not immediately report their rapes and assaults"); *United States v. Alzanki*, 54 F.3d 994, 1006 (1st Cir. 1995) (upholding, as reliable under *Daubert*, testimony based on expert's general research and personal interaction with hundreds of abuse victims that alleged victim's "behavioral response to the non-sexual abuse administered by the [defendants] was *consistent with the behavior of abuse victims generally*") (emphasis in original), *cert. denied*, 516 U.S. 1111 (1996).

14

b.

Simmons also contends Dr. Fitzgerald usurped the jury's role by testifying to the ultimate issue: whether Robinson was sexually assaulted. In this regard, Dr. Fitzgerald testified that Robinson's behavior following the incident, as well as her in-court testimony, were "quite consistent with that ... of rape victims". According to Simmons, this constitutes an expropriation of the jury's fact-finding function to determine the veracity of the accuser. As noted, the district court overruled Simmons' objection on this point, reasoning, *inter alia*, that the jury could believe or disregard Dr. Fitzgerald's testimony as it could for any witness.

Simmons' jury-usurpation contention overlooks Dr. Fitzgerald's related testimony: "I never give testimony as to whether or not a rape did or did not occur". Simmons also does not mention the district court's instructing the jury it could discredit any witness' testimony. Even viewed in isolation, however, Dr. Fitzgerald's testimony did not impermissibly intrude upon the jury's determination of Robinson's credibility. Mental-health experts are permitted to testify that "symptoms and recollections appear[] genuine and that [the expert believes she or] he ha[s] not been 'duped'" by a fabricated account. ***Skidmore v. Precision Printing & Pkg., Inc.***, 188 F.3d 606, 618 (5th Cir. 1999) (holding district court did not abuse its discretion by admitting

15

psychiatrist's testimony that plaintiff suffered post-traumatic stress disorder and that "he did not think [the plaintiff] had lied to him or fabricated her psychiatric symptoms").

As in **Skidmore**, Dr. Fitzgerald stated Robinson's behavior and testimony were "quite consistent" with that of sexual-assault victims. She did not even go as far as the expert in **Skidmore** who, in addition to opining on the typicality of the plaintiff's behavior, also concluded the plaintiff had undergone a traumatic event and suffered its aftermath in the form of post-traumatic stress disorder. *Id.* Dr. Fitzgerald's testimony did not intrude on the jury's fact-finding function.

### 3.

When a party timely objects, rulings on evidentiary issues are reviewed for abuse of discretion. *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998). *See* FED. R. EVID. 103(a). Simmons challenges part of his state-trial testimony being admitted in evidence during the Government's case-in-chief. The challenged portion concerned Simmons' denials of assaulting Robinson and his account of the night's events.

At both a pre-trial hearing and the start of trial, Simmons objected to such evidence, claiming: his prior testimony did not qualify as an admission of a party-opponent under Federal Rule of Evidence 801(d)(2)(A) (and, therefore, was not an exception to the hearsay rule) because it was not incriminating; it was inadmissible

16

under Rule 404(b) because, if he was lying, such perjury would constitute a separate extrinsic bad act; and, the Government was collaterally estopped from introducing the prior testimony because Simmons had been acquitted in state court. The district court overruled Simmons' objection, reasoning his testimony was admissible under Rule 801(d)(2) and was *not* excludable under Rule 404(b).

a.

Because the testimony at issue was not hearsay under Rule 801(c), we need not consider whether it qualified as a Rule 801(d)(2)(A) exception to the hearsay rule.

Simmons' prior testimony was *not* introduced for the truth of what Simmons asserted. FED. R. EVID. 801(c) ("'Hearsay' is a statement ... offered in evidence to prove the truth of the matter asserted."). Out-of-court statements are *not* hearsay when "the point of the prosecutor's introducing those statements was simply to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false". *Anderson v. United States*, 417 U.S. 211, 219-20 (1974) (footnote omitted); *see also United States v. Meyer*, 733 F.2d 362, 363 (5th Cir. 1984) (holding defendant's false exculpatory statements admissible to show consciousness of guilt). The Government proffered Simmons' prior testimony *not* for its veracity, but for use in demonstrating its falsity through other

17

evidence, thereby suggesting he fabricated an alibi.  It was *not* hearsay.

b.

Similarly, Simmons' state-court testimony was *not* inadmissible under Rule 404(b) because it did *not* constitute a separate extrinsic bad act.  The prior testimony was relevant to issues other than Simmons' bad character.  It was introduced not to show Simmons lied in the past, was a bad person, and, therefore, must have sexually assaulted Robinson; rather, it was introduced to show his consciousness of guilt and that he had lied in order to fabricate an alibi.  ***Villarreal***, 324 F.3d at 325 (defendant's false statements "may give rise to an inference of consciousness of guilt").

c.

Finally, the Government was *not* collaterally estopped from introducing the state-court testimony. Collateral estoppel applies "when an issue of ultimate fact has once been determined by a valid and final judgment[;] that issue cannot again be litigated between the *same parties* in any future lawsuit".  ***United States v. Angleton***, 314 F.3d 767, 776 (5th Cir. 2002) (emphasis in original) (quoting ***Ashe v. Swenson***, 397 U.S. 436, 443 (1970)), *cert. denied*, 538 U.S. 946 (2003).  Because the United States and the State of Mississippi "as separate sovereigns, are not the same party", the collateral-estoppel doctrine is inapposite.  ***Id.***

18

4.

Simmons next claims the district court abused its discretion by admitting evidence Simmons failed to log the marijuana seized during the traffic stop. Prior to, and during, trial, Simmons moved to exclude evidence of his not doing so on the grounds it constituted Rule 404(b) character evidence of other crimes. In each instance, the court ruled against Simmons on the basis that the evidence was intrinsically relevant to what happened the night of the sexual assault and was not excluded by Rule 404(b).

Assuming *arguendo* the evidence was extrinsic, *not* intrinsic to the charged offense, there was no error. "For admission under Rule 404(b), extrinsic evidence must satisfy two criteria: '(1) it must be relevant under Federal Rule of Evidence 401 to an issue other than the defendant's character; and (2) it must have probative value that substantially outweighs its prejudicial impact under Federal Rule of Evidence 403.'" *United States v. Infante*, 404 F.3d 376, 388 (5th Cir. 2005) (quoting *United States v. Walters*, 351 F.3d 159, 165 (5th Cir. 2003)).

Simmons' failure to log the marijuana was both relevant to issues other than his character and probative on these issues substantially beyond its prejudicial impact. The marijuana seizure is integral to the events leading to Robinson's sexual assault. It also corroborates Robinson's testimony that Simmons did not go inside the police station prior to the assault. Moreover, it

19

suggests Simmons did not want JPD attention turned to Robinson; if she were charged and interrogated for the marijuana possession, she might reveal the sexual assault.

Finally, Simmons' omission evinces consciousness of guilt. In his state-trial testimony, Simmons claimed he logged the marijuana after the traffic stop and spent considerable time at police headquarters while Catchings booked Robinson's boyfriend. In district court, however, the Government showed Simmons never logged the marijuana and did not return to police headquarters until two hours later than he claimed. The jury could reasonably infer Simmons' apparent fabrication was an attempt to create an alibi to conceal the sexual assault. *Villarreal*, 324 F.3d at 325 ("a defendant's exculpatory statements which are shown by other evidence to be false may give rise to an inference of consciousness of guilt") (citing *United States v. Pringle*, 576 F.2d 1114, 1120 (5th Cir. 1978)).

5.

Simmons maintains the district court abused its discretion by allowing the Government, in closing argument, to state he kidnapped Robinson. The Government argued:

> The evidence clearly establishes that the defendant placed Syreeta [Robinson] in fear of death, serious bodily injury, or kidnapping. First of all, he had already kidnapped her. And the reason that kidnapping is one of the of the factors that raises this to aggravated sexual abuse is because of the very terror that Syreeta told you about, the fear that she

20

> experienced when she was taken out to this
> remote location with two armed officers ....

At trial, Simmmons objected pursuant to Rule 404(b), which prohibits the admission of extrinsic crimes or bad acts to show the defendant behaved in conformity therewith. FED. R. EVID. 404(b). Simmons asserted the Government was improperly insinuating he committed kidnapping, a crime not charged, and which suggested he possessed the character of a person who would commit sexual assault and aggravated sexual abuse. The district court overruled the objection, reasoning there was a fair inference Simmons had kidnapped Robinson.

Simmons maintains the Government violated Rule 404(b), not by introducing new evidence of prior crimes to show conformity therewith, but by accusing Simmons of crimes not charged in the indictment, which, according to Simmons, accomplishes the same character attack Rule 404(b) proscribes. Accordingly, Simmons maintains the district court reversibly erred by failing to instruct the jury to disregard these comments.

Contrary to Simmons' assertions, the Government's kidnapping statements were not a proffer of bad acts to demonstrate bad character and subsequent behavior in conformity therewith. Instead, they were offered to assist in showing Robinson complied with Simmons' sexual demands because she feared for her life. Even if the statements were improper, they did not amend the indictment

21

or alter the essential elements the Government had to establish to convict Simmons.

We further note that, as with any such abuse of discretion claim, assuming *arguendo* the Government's statements were erroneously permitted, Simmons had to show further they affected his substantial rights; the comments must have been so prejudicial as to affect the outcome of the proceeding. ***United States v. Saldana***, 427 F.3d 298, 314 (5th Cir.), *cert. denied*, 126 S.Ct. 810 (2005). In the light of all the evidence and reasonable inferences drawn therefrom, the kidnapping comment did *not* prejudice the jury by suggesting any action not already presented to it by inference. As the district court ruled, it was a fair inference. Therefore, the contested portion of the Government's closing argument did not affect Simmons' substantial rights in a way that affected the outcome of his trial.

6.

Finally, Simmons maintains the district court reversibly erred by refusing his request to instruct the jury he was acquitted in state court. He made this request after the Government referred to "the state trial" in a redirect-examination question to the victim. This violated a motion-in-limine ruling instructing the parties to refer to that trial as "prior proceedings". Simmons twice moved for a mistrial based on the alleged prejudicial effect of the Government's statement; it was denied each time.

22

Refusing to give a requested instruction is reviewed for abuse of discretion. *See* **United States v. De La Rosa**, 171 F.3d 215, 219 (5th Cir. 1999). Further, a ruling that the Government's statements, even though violative of a prior ruling, did *not* prejudice the defendant is also reviewed for abuse of discretion; again, the defendant must show the statements affected his substantial rights. *See* **United States v. Morrow**, 177 F.3d 272, 298 (5th Cir.), *cert. denied*, 528 U.S. 932 (1999). For obvious reasons, "[t]he district judge's assessment of the prejudicial effect carries considerable weight". **Id.**

"[A]s a general matter, a trial court does not abuse its discretion in excluding evidence of a prior acquittal on a related charge". **De La Rosa**, 171 F.3d at 219. Such evidence "is not relevant because it does not prove innocence but rather merely indicates that the prior prosecution failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime". **Id.** (internal quotation omitted). In addition, a judgment of acquittal is hearsay that does not satisfy an exception to the hearsay rules. **Id.** Finally, such evidence is often excludable under Federal Rule of Evidence 403, as its probative value likely will be "substantially outweighed by the danger of prejudice, confusion of the issues, or misleading the jury". **Id.** at 220 (quoting FED. R. EVID. 403).

Nevertheless, Simmons contends the reference to "the state trial", coupled with testimony that he was terminated by the JPD, created an inference of prior adjudicated guilt so prejudicial that instructing the jury on his prior acquittal was merited. Of course, the jury could have inferred plausibly either the Government was referring to the state trial of *Catchings* or that Simmons was *not convicted* in the earlier state trial. Given these plausible inferences, and the isolated reference to "the state trial" (of which Simmons' lead counsel admitted, to the district court, *not* being aware until advised much later by co-counsel), we conclude the court did *not* abuse its discretion by refusing the requested state-trial-acquittal instruction.

B.

The two remaining issues are presented by the Government's cross-appeal: (1) whether the district court, in calculating the Guidelines range, erred by refusing to impose § 2A3.1(b)(3)(A)'s two-level enhancement, which applies if the victim was "in the custody, care or supervisory control of the defendant"; and (2) whether the 240-months sentence, which was considerably below the Guideline range, was unreasonable under **Booker**.

1.

Although, pursuant to **Booker**, the district court did *not* impose a mandatory Guidelines sentence, it was still required, post-**Booker**, to properly determine the Guidelines range as part of

24

the process for determining Simmons' sentence. *E.g., **United States v. Smith***, 440 F.3d 704, 707 (5th Cir. 2006). In that regard, its factual findings are reviewed for clear error; its interpretation and application of the Guidelines, *de novo*. *E.g., **United States v. Villegas***, 404 F.3d 355, 359 (5th Cir. 2005).

The 1998 version of the Guidelines, in effect at the time of Simmons' September 1999 offense, was applied because it was found less punitive than the 2004 version in effect at the time of sentencing. Although the Presentence Investigation Report, based on the 1998 version, recommended a total offense level of 43, corresponding to a sentence of life imprisonment, the district court concluded the offense level was instead 41, corresponding to a sentencing range of 324-405 months. It included in its Guidelines calculation both a six-level "color of law" enhancement under § 2H1.1(b)(1) and a four-level abduction-of-the-victim enhancement under § 2A3.1(b)(5). It sustained, however, Simmons' objection to a two-level enhancement under § 2A3.1(b)(3)(A) for a victim's being "in the custody, care, or supervisory control of the defendant". In support of that objection, Simmons contended § 2A3.1(b)(3)(A) was both mutually exclusive with the above-referenced § 2A3.1(b)(5) or § 2H1.1(b)(1) and inapplicable to an officer/arrestee situation. (As discussed *infra*, Simmons also maintained there was no evidence Robinson was in his "custody".) The district court ruled imposition of the "custody" enhancement

25

would be "double counting" in the light of § 2A3.1(b)(5)'s "abduction" enhancement.

a.

As the Government contends, this "double-counting" ruling was erroneous. Application of both §§ 2A3.1(b)(3)(A) and 2A3.1(b)(5) is *not* double-counting because each provision accounts for a distinct harm. Section 2A3.1(b)(3)(A)'s "custody" enhancement concerns the defendant's violating a position of trust and accounts for the increased risk of psychological damage made possible when the victim is harmed by a person in such a position. *See* U.S.S.G. § 2A3.1 cmt. background (1998) ("Whether the custodial relationship is temporary or permanent, the defendant in such a case is a person the victim trusts *or to whom the victim is entrusted*. This represents the potential for greater and prolonged psychological damage." (emphasis added)). More specifically, in the police-custody context, § 2A3.1(b)(3)(A) "punishes abuse of power over an individual in the officer's physical and legal control" and "recognizes the particular harm inflicted when an individual entrusted to the care and supervision of an officer of the state is unlawfully abused by [her] supposed caretaker". ***United States v. Volpe***, 224 F.3d 72, 76 (2d Cir. 2000).

In contrast, a § 2A3.1(b)(5) "abduction" enhancement recognizes that "[a]bduction increases the gravity of sexual assault or other crimes because the perpetrator's ability to

26

isolate the victim increases the likelihood that the victim will be harmed". *United States v. Hefferon*, 314 F.3d 211, 226 (5th Cir. 2002) (quoting *United States v. Saknikent*, 30 F.3d 1012, 1013 (8th Cir. 1994)). *See also* U.S.S.G. § 1B1.1, cmt. n.1(A) (1998) ("'Abducted' means that a victim was forced to accompany an offender to a different location.").

Moreover, even assuming *arguendo* §§ 2A3.1(b)(3)(A) and 2A3.1(b)(5) *did* address the same harm, this court has recognized the lack of a general Guidelines double-counting prohibition, holding it exists only if "specifically forbidden by the particular [G]uideline at issue ... [through] *express language*". *United States v. Calbat*, 266 F.3d 358, 364 (5th Cir. 2001) (emphasis added). The Guidelines contain *no such* specific, express prohibition against application of both §§ 2A3.1(b)(3)(A) and 2A3.1(b)(5). With regard to § 2A3.1(b)(3)(A), there is only one express double-counting prohibition, and it applies to *§ 3B1.3*, not § 2A3.1(b)(5). *See* U.S.S.G. § 2A3.1 cmt. n.3 (1998) ("If the adjustment in subsection (b)(3) applies, do not apply § 3B1.3 (Abuse of Position of Trust or Use of Special Skill)."). The absence of such an express prohibition has been at least *indirectly* recognized. *See United States v. Brown*, 330 F.3d 1073, 1079-80 (8th Cir. 2003) (affirming sentence which imposed enhancements under both §§ 2A3.1(b)(5) and 2A3.1(b)(3)(A); no double-counting contention was raised as to these enhancements, however).

b.

Along this line, rather than rely upon the district court's basis for not applying the enhancement, Simmons maintains, as he did for sentencing, that § 2A3.1(b)(3)(A) is inapplicable because Robinson was *not* in his "custody, care, or supervisory control". U.S.S.G. § 2A3.1(b)(3)(A). In doing so, he focuses on commentary from the *current*, *not* the applicable 1998, version of the Guidelines, which states, *inter alia*, that the enhancement "*includes* offenses involving a victim *less than 18 years of age* entrusted to the defendant, whether temporarily or permanently". U.S.S.G. § 2A3.1 cmt. n.3(A) (2005) (emphasis added).

At the time of the offense, the victim was 19 years of age. Therefore, Simmons contends § 2A3.1(b)(3)(A) does *not* apply to police custody of adults, such as the victim, but was meant *only* to apply when a *minor* is entrusted to a caretaker. *See, e.g.,* **United States v. Yazzie**, 407 F.3d 1139, 1148 (10th Cir.) (Briscoe, J., concurring) (defendant testified he lived with and had disciplinary authority over the minor-victim, who referred to defendant as her stepfather), *cert. denied*, 126 S. Ct. 303 (2005); **United States v. Brown**, 330 F.3d 1073, 1076 (8th Cir.) (minor-victim's mother signed note giving minor-victim permission to travel with defendant), *cert. denied*, 540 U.S. 975 (2003); **United States v. Carroll**, 190 F.3d 290, 292 n.3 (5th Cir. 1999) (defendants were Boy Scout troop

28

leaders for the minor-victims), *withdrawn in part*, 227 F.3d 486 (5th Cir. 2000).

As the applicable 1998 Guidelines' plain language makes clear, however, § 2A3.1(b)(3)(A) is *not* limited to the minor/caretaker context. Rather, it was explicitly intended to have "*broad application*". U.S.S.G. § 2A3.1 cmt. n.2 (1998) (emphasis added). Although the Guidelines list "teachers, day care providers,[ and] baby-sitters" as *examples* of those to whom § 2A3.1(b)(3)(A) applies, they are simply "*among those* who [are] subject to this enhancement". *Id.* (emphasis added). Contrary to Simmons' contentions, nothing in the Guidelines indicates § 2A3.1(b)(3)(A) excludes police custody of *adults*; in fact, it has been applied in such a context. *See* **Volpe**, 224 F.3d at 76 (affirming application of § 2A3.1(b)(3)(A) when adult victim was in police custody).

Robinson, then 19, was arrested, handcuffed, and placed in the back of Simmons' police vehicle. He was an on-duty JPD officer. Catchings, another on-duty JPD officer, was aware Robinson was in Simmons' police vehicle. Accordingly, for numerous obvious reasons, she was "entrusted" to Simmons' care and supervision. Robinson remained under his control, and in his custody, during the relevant events, until Catchings drove her home. It goes without saying that Robinson was in Simmons' "custody" or "care" for the purposes of § 2A3.1(b)(3)(A).

29

In sum, the district court misapplied § 2A3.1(b)(3)(A). Accordingly, Simmons' sentence must be vacated and this matter remanded for resentencing.

2.

The 240-months sentence imposed by the district court was 84 months less than the low end of the Guidelines range (calculated erroneously by the district court, as discussed above). The Government claims the sentence is unreasonable because the district court failed to properly consider factors contained in 18 U.S.C. § 3553(a) and focused instead on Simmons' age. Because this matter is remanded for resentencing, we do *not* decide this claimed sentencing error. *See* **United States v. Tzep-Mejia**, 461 F.3d 522, 526 (5th Cir. 2006) ("If the district court makes an error in application of the Guidelines, we vacate the resulting sentence without reaching the sentence's ultimate reasonableness.") (citation omitted).

Nevertheless, in our supervisory capacity, as well as to assist the district court on remand, we note the following Guidelines policy statement from the applicable 1998 version: "Age ... *is not ordinarily relevant* in determining whether a sentence should be outside the applicable guideline range [but] may be a reason to [depart downward] when the defendant is *elderly and infirm*". U.S.S.G. § 5H1.1 (1998) (emphasis added). On remand, § 5H1.1 is particularly noteworthy, because it appears the decision

30

to sentence below the Guideline range was based solely on Simmons' age. When asked by the Government at sentencing to explain the grounds for the sentence, the district judge replied:

> The court simply feels that a term of imprisonment of 20 years for a man who is 48 years old is a sufficient sentence in this case and serves all of the reasons for incarcerating a person for a long period of time. The court does not feel that a sentence in excess of 20 years would be beneficial either to the victim, to the public or to the defendant himself.
> The court believes that a sentence within the guideline range without the departure would, in essence, put this man probably very close if not at the end of his life. And I think that 20 years of imprisonment is enough.

Pre-*Booker*, our court rejected this same age-based rationale. *See, e.g., United States v. Fierro*, 38 F.3d 761, 775 (5th Cir. 1994) (vacating sentence, which had a downward departure, the district court's having reasoned "a 20-year sentence was long enough" for a defendant who "would be 64 or 65 when he got out of prison"; our court held, *inter alia*, "a defendant's age is an improper basis for departure unless the defendant is 'elderly and infirm' at the time of sentencing"), *cert. denied*, 514 U.S. 1051 (1995).

Post-*Booker*, our court has not ruled on, in the light of § 5H1.1's policy statement, a district court's focus on age in imposing a non-Guidelines ("reasonable") sentence. Other circuits, however, have held such consideration not inappropriate. *See, e.g., United States v. Davis*, 458 F.3d 491, 498 (6th Cir. 2006)

31

("[A] trial court ... has a freer hand to account for the defendant's age in its sentencing calculus under § 3353(a) than it had before *Booker*".); *United States v. Smith*, 445 F.3d 1, 5 (1st Cir. 2006) (holding district court did not err, *inter alia*, by considering age because "[t]hat a factor is discouraged or forbidden under the guidelines does not automatically make it irrelevant"). *But see United States v. Lee*, 454 F.3d 836, 839 (8th Cir. 2006) ("age is normally not relevant to sentencing, unless the defendant is elderly or infirm").

Although consideration of age appears not to be *per se* unreasonable post-*Booker*, a district court's sentencing discretion, and our reasonableness-inquiry on appeal, must be guided by the sentencing considerations stated in 18 U.S.C. § 3553(a). *See Tzep-Mejia*, 461 F.3d at 528; *see also United States v. Mares*, 402 F.3d 511, 519 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005). One such guiding consideration is "any pertinent policy statement ... issued by the Sentencing Commission". 18 U.S.C. § 3553(a)(5)(A). Our court recently held: "[A] district court that 'relies on any factors ... deemed by the Guidelines to be prohibited or discouraged ... [should] address these provisions and decide what weight, if any, to afford them in light of *Booker*'". *United States v. Duhon*, 440 F.3d 711, 717 (5th Cir. 2006) (quoting *United States v. Jackson*, 408 F.3d 301, 305 n.3 (6th Cir. 2005)) (alteration in

32

quotation), *petition for cert. filed*, (U.S. 18 May 2006) (No. 05-11144).

Accordingly, a district court should acknowledge such a policy statement and explain why the prohibited or discouraged factor, as it relates to the defendant, is so extraordinary that the policy statement should *not* apply. *See* **id.**; **United States v. Guidry**, 462 F.3d 373, 377 (5th Cir. 2006) (finding sentence unreasonable partly because district court "failed to acknowledge [relevant Guidelines] policy statement"). A district court's failure to do so bears on the reasonableness of the sentence it imposes, as guided by the § 3553(a) factors. *See* **Duhon**, 440 F.3d at 717; **Guidry**, 462 F.3d at 377.

### III.

For the foregoing reasons, Simmons' conviction is **AFFIRMED**; his sentence is **VACATED**; and this matter is **REMANDED** for resentencing.

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING**