Everitt W. THOMPSON, William R. Phillips and Earl N. Stokes, Appellants,

v.

UNITED STATES of America, Appellee.

No. 20581.

United States Court of Appeals
Fifth Circuit.

Feb. 2, 1965.

Rehearings Denied March 12, 1965.

Certiorari Denied May 24, 1965.
See 85 S.Ct. 1560.

Joe Creel, Creel & Glasgow, Miami, Fla., for appellant Thompson.

Steadman S. Stahl, Jr., William R. Phillips, Fort Lauderdale, Fla., for appellant Phillips.

Joseph B. Merlin, Miami, Fla., for appellant Stokes.

Donald E. Stone, Asst. U. S. Atty., William A. Meadows, Jr., U. S. Atty., Lloyd G. Bates, Jr., Asst. U. S. Atty., Southern Dist. of Florida, Miami, Fla., James C. Bright, Asst. Regional Counsel, I. R. C., Atlanta, Ga., on the brief, for appellee.

Before TUTTLE, Chief Judge, and JONES and ANDERSON,* Circuit Judges.

ANDERSON, Circuit Judge.

The indictment in this case charged all three defendants, Everitt W. Thompson, William R. Phillips and Earl N. Stokes, in a single count of conspiracy to defraud the United States of payment of a tax on distilled spirits and to commit offenses against the laws of the United States concerning the illicit possession, transportation and distribution of distilled spirits. Each defendant was also charged with several counts alleging the substantive offenses. In a jury trial, all were found guilty as charged and were sentenced. Each filed motions for judgment of acquittal n. o. v. or for new trial. The motions were denied and from those rulings the defendants have appealed.

The prosecution resulted from certain events of April 3, 4, and 5, 1962 which were disclosed through investigations by Federal Agent Scott and by Florida State Officials, Glass and Washburn, into the activities of the appellants in distributing and selling moonshine whiskey. Assisting them was an undercover informer, Thorn, who was named in the indictment as a co-conspirator but not as a defendant. On April 3rd Thorn advised Glass that a 1950 green Buick automobile loaded with moonshine whiskey would be parked, about supper time on April 4, 1962, in front of the house of the appellant Stokes in Miami, from which distribution of the whiskey was to be made to customers in that city. Glass told the other officers of this. They already had received from other sources information that Stokes was involved in the illicit whiskey operations in the area and that he had a record and a reputation as a liquor law violator. At about 6.30 P.M. April 4, 1962, Glass and Scott drove past Stokes' house and saw in front of it a Buick car, which matched Thorn's description and which appeared to be heavily loaded. At about 7:15 P.M. Stokes came out of his house, got in the car and drove off. Glass and Scott in one automobile and Washburn in another followed him for some distance; they then stopped Stokes and seized a large quantity of illicit whiskey which was in the car.

The next morning, on April 5th, Thorn told Glass that in the evening there would be a transfer of moonshine whiskey from a Chevrolet pickup truck, owned by the

appellant Phillips, to a 1953 Chrysler automobile at the premises of Dade Tire Co. in Miami. Glass gave this information to Scott. The officers had received information that the appellant Thompson, who was owner and manager of the Dade Tire Co., was engaged in illicit liquor traffic and that transfers of moonshine whiskey had taken place at the Tire Co. They had also learned that the appellant Phillips had a record and a reputation of being a liquor law violator.

At about 6:30 P.M. the officers went to the vicinity of the Dade Tire Co. and saw parked in the Tire Co. lot a Chrysler car, such as the one Thorn had described, and a Chevrolet truck with the name "Phillips" printed on its side.

The lot where the Chrysler car was parked was used for wheel realignment. It was bounded on one side by a building and on the other sides by a fence which had in it a three-car-wide opening to the street through which people having business there were free to come and go. Thorn met Glass a little distance from the lot and told him that the whiskey was in the truck, awaiting transfer to the Chrysler. From a point 60–80 yards away, Glass, with the use of binoculars, saw the appellants Phillips and Thompson with Thorn, moving what appeared to be five gallon jugs in burlap bags from the truck into the trunk of the Chrysler. Phillips, with Thorn in the truck with him, then drove out of the Dade Tire Co. lot and down the street past where Glass was located. Glass told the other officers what had happened. Scott in his car followed the Phillips' truck for a short distance and then pulled along side of it. The truck stopped and Phillips and Thorn got out and ran. Scott apprehended Phillips and returned with him to the Dade Tire Co. lot where Scott opened the trunk of the Chrysler and found ten five-gallon jugs of moonshine whiskey.

■ The appellants have made several assignments of error on this appeal, relating to the conduct of the trial. They assert that the trial judge should not have denied their motion to compel the Government to elect which of the two

conspiracies, i. e. one, the events of April 4th involving Phillips, Thorn and Stokes, and the other, the events of April 5th, involving Phillips, Thorn and Thompson, it would proceed upon. They claim a resulting variance between the single conspiracy charged and the series of events on April 4th in which Thompson was not involved and those on April 5th in which Stokes was not involved. Assuming arguendo that this is so, they make no showing of any way in which the variance was material or prejudicial to any appellant, and we cannot perceive from the record of this case, in which the evidence was clear and uncomplicated and in which there were so few defendants, how it was in any way harmful. We find in this no reversible error. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); Sigers v. United States, 321 F.2d 843 (5th Cir. 1963).

The appellants urge that the court erred in permitting the informer Thorn, over their objections, to refresh his recollection from a statement signed by him but typewritten by State Officer Kelly from the original notes made by Thorn. It appears that the statement inaccurately recited the date on which Thorn first met Glass, and Thorn's original notes were destroyed or thrown away by Thorn after Officer Kelly had typed the report. The appellants assert that there was no showing that Thorn's unaided memory on the witness stand had been exhausted or that the typewritten statement actually refreshed his recollection.

■ The principal requirements for the use of the statement for the purpose were that the witness demonstrated a need for having his memory refreshed and that the paper used had that effect. N. L. R. B. v. Federal Dairy Company, 297 F.2d 487 (1st Cir. 1962). The reliability or truthfulness of the statement was relevant only to the problem of the weight and credibility to be accorded the witness' testimony. United States v. Riccardi, 174 F.2d 883 (3rd Cir. 1949), cert. denied, 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746 (1949). See also Fanelli v. United States Gypsum Co., 141 F.2d

216 (2d Cir. 1944). The fact that a government agent instead of the witness prepared the statement is inconsequential. See Jones v. United States, 282 F. 2d 745 (4th Cir. 1960).

■■ The trial judge has a duty to prevent a witness from putting into the record the contents of an otherwise inadmissible writing under the guise of refreshing recollection, Delaney v. United States, 77 F.2d 916, 917 (3d Cir. 1935); and, as Judge Aldrich pointed out in Federal Dairy Company, supra, 297 F. 2d at 489, counsel should not be permitted to give a witness a written statement, especially prepared for his use in testifying, to obviate the necessity of introducing original records, on the assumption that anything can be used to refresh recollection. Under such circumstances the witness is not really testifying from his own recollection. See McCormick, Evidence § 9 at 18 (1954).

■ In the present case, however, the court properly supervised the use of the statement to refresh Thorn's recollection; and, where there was an absence of the customary formalistic wording to show inability to recollect without aid and the refreshing effect of the writing, the context of the specific queries, the witness' spoken reaction and the trial judge's opportunity to observe the witness' demeanor, leave no occasion to find reversible error in his rulings on these objections.

■ The appellants also assign error in the denial by the trial court of their motion for a new trial on the ground that the Deputy Marshal attending the court approached one of the jurors and asked her some questions about her conversation, at recess, with the appellant Phillips. The judge in the absence of the jury advised all counsel in the case that a Deputy Marshal had disclosed to him that another Deputy Marshal had been told of the juror talking with Phillips. Phillips was interrogated about it in the presence of the judge and counsel. Appellants now claim prejudice because they were not specifically told that the Deputy Marshal who first heard of the contact between Phillips and the juror, queried the juror as to the subject of her conversation with Phillips. When the judge advised counsel of the matter, they all had an opportunity to inquire into the circumstances further, including the chance to question the Deputy Marshal who reported to the judge and the Deputy Marshal's source of information. They were all put upon inquiry but, except for the questioning of Phillips, did not then pursue it. All counsel at that time treated the matter as inconsequential and proceeded with the trial. After the appellants were convicted and in connection with the motion for acquittal n. o. v. or a new trial, the Deputy Marshal who spoke to the juror about her conversation with Phillips, was examined about the incident at a regular court hearing. It appears from his testimony that what the juror told him of the conversation was consistent with Phillips' account, and the Deputy Marshal, himself, who was at the time in charge of the jury, simply instructed her to say nothing about it to anyone. The trial Judge decided that the incident had been harmless, and that none of the conversation or the surrounding circumstances had been prejudicial to the accused. We find no abuse of discretion. Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892); Roberson v. United States, 249 F.2d 737 (5th Cir.), cert. denied 356 U.S. 919, 78 S.Ct. 704, 2 L. Ed.2d 715 (1958); Bullock v. United States, 265 F.2d 683 (6th Cir.), cert. denied 360 U.S. 909, 79 S.Ct. 1294, 3 L.Ed.2d 1260 (1959).

■ The appellants, in the trial court, moved to suppress the evidence of the moonshine taken from the 1950 Buick on April 4th. They now appeal from the trial judge's denial of their motion. They claim that the search violated the Fourth Amendment to the Constitution of the United States because there was lack of probable cause or in the alternative, ample opportunity to procure a warrant, which the officers did not do. The search, however, was entirely reasonable;

there was probable cause which became apparent at a time when there was no opportunity to seek a warrant, and the search was valid as incidental to Stokes' arrest. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Patenotte v. United States, 266 F.2d 647 (5th Cir. 1959).

 The appellants at the trial also moved to suppress the evidence procured in the search of the 1953 Chrysler car in the lot of the Dade Tire Co. on April 5th because, they claimed, the search was conducted without a warrant and was not incidental to an arrest. They appeal from the trial court's denial of their motion. The appellants do not dispute that there was probable cause for the search of the automobiles. Their protests that the officers had ample opportunity to obtain a warrant are based largely on hindsight. Even so, only a very brief time, approximately an hour, elapsed within which a warrant could have been obtained. Viewed prospectively the officers at 6:30 P.M. on April 5th when they saw the Chevrolet truck and the Chrysler in the Dade Tire Co. lot, at which point probable cause first attached, had no knowledge as to when either car would be moved or how many apparent moonshiners they would have to deal with and, consequently, how much time was available or how safe it would be to deplete their forces to send one of the officers for a warrant. Phillips, within the observation and knowledge of the officers, was involved with the use of both the Chevrolet truck from which he had taken the bags and containers and the Chrysler car in which he had put them. He was driving away in the Chevrolet truck when he was arrested. He was immediately returned to the Dade Tire Co. lot and a search of the Chrysler was made forthwith.

It is our conclusion that the search of both automobiles was made on probable cause, when it was impracticable to obtain a warrant, and was not unreasonable. Moreover, the search of the Chrys-

ler was not so remote in time and distance as not to be incident to the arrest of Phillips, and the action was necessary to preserve evidence of the offenses. United States v. Rabinowitz, supra. See also Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

We have considered the remaining claims made by the appellants and conclude that they are without merit. The judgments are affirmed.

