# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 25, 2009

Charles R. Fulbruge III
Clerk

No. 08-60961

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MICHAEL SHANE CAREY,

Defendant-Appellant

Appeal from the United States District Court for the
Southern District of Mississippi

Before WIENER, GARZA, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

A jury convicted Michael Shane Carey of four counts of aggravated sexual abuse of a minor, and the trial court sentenced Carey to four life terms of imprisonment. Carey appeals with three challenges to the admission of evidence at trial, and with three challenges to his sentence. We affirm both the conviction and the sentence.

I.

A.

"We recite the facts in the light most favorable to the verdict." *United States v. Olis*, 429 F.3d 540, 541 n.1 (5th Cir. 2005). At age twenty-nine, Carey lived with his girlfriend Marsha Bull, Bull's eleven-year-old daughter "DJ," and Bull's two other children. Carey sexually assaulted DJ in the home on four occasions. On each occasion, Carey engaged in intercourse with DJ despite DJ's objections, and on one occasion, Carey wrapped DJ's hair around her neck as a means of choking DJ during the intercourse. After some delay, DJ notified Bull of the assaults, prompting Bull to notify police and take DJ to a local hospital for a physical examination.

B.

The government indicted Carey and alleged the commission of four counts of aggravated sexual abuse with a minor younger than twelve. *See* 18 U.S.C. 2241(c) (aggravated sexual abuse with children); *see also* 18 U.S.C. 1153(a) (jurisdiction over Indian crimes). DJ testified during the two-day trial, and at times read from a police report—an officer's written record of the officer's prior interview with DJ. The government also called Tammy Hutchison, a criminal investigator for the Mississippi Band of Choctaw Indians who specialized in child sexual assaults, to testify about her discussions with DJ. The jury found Carey guilty of all four counts.

At Carey's sentencing hearing, the government sought and obtained a four-level enhancement for the use of force against the victim. *See* U.S. Sentencing Guidelines Manual § 2A3.1(b)(2)(A) (2006) [hereinafter U.S.S.G.]. The district court's final judgment sentenced Carey to four life terms of

imprisonment, a life term of supervised release, and $400 in criminal monetary penalties. Carey then filed the instant appeal.

## II.

## A.

First, Carey challenges his conviction by arguing that the prosecutor misused a police report during DJ's testimony. Under Federal Rule of Evidence 612, a witness may use a writing to refresh his or her recollection only if (1) the witness requires refreshment, and (2) the writing actually refreshes the witness's memory. *See United States v. Horton*, 526 F.2d 884, 888–89 (5th Cir. 1976); *Thompson v. United States*, 342 F.2d 137, 139 (5th Cir. 1965). A witness may not, under the guise of Rule 612, testify directly from a writing. S*ee Horton*, 526 F.2d at 888–89; *Thompson*, 342 F.2d at 139. Early in DJ's testimony, her inability to answer a question—"Do you remember what happened with you and Michael the first time he touched you?"—prompted the government to show DJ an "officer's recollection of the interview with the witness [DJ]" that DJ had reviewed. Carey argues that the resulting testimony violated Rule 612 because the report did not actually refresh DJ's memory. The government argues that the police report did refresh DJ's memory, and that no part of the record indicates impermissible reliance.

We review the district court's decision to admit DJ's testimony over Carey's objection for an abuse of discretion. On appeal, Carey claims that DJ impermissibly relied on the report throughout much of her testimony, but because he only objected to one instance at trial, we apply abuse-of-discretion review to that instance alone. *See, e.g.*, *United States v. Setser*, 568 F.3d 482, 493

(5th Cir. 2009).[1]

Carey's Rule 612 challenge fails for two reasons. Initially, Carey's proposed proof-of-refreshment requirement—that a witness relying upon a Rule 612 writing must explicitly declare that the writing has, in fact, refreshed the witness's memory of the subject—does not exist in this circuit, for we rejected it long ago. *See Thompson*, 342 F.2d at 139–40. After the defendant in *Thomspon* argued that "there was no showing that . . . the typewritten statement actually refreshed his [the witness's] recollection," we announced principles that apply directly to this case:

> [W]here there was an absence of the customary formalistic wording to show inability to recollect without aid and *the refreshing effect of the writing*, the context of the specific queries, the witness' spoken reaction and the trial judge's opportunity to observe the witness' demeanor, leave no occasion to find reversible error in his rulings on these objections.

*Id.* (emphasis added). While it remains true that "[c]aution must be exercised to insure that the document is actually being used for purposes of refreshing and not for purposes of putting words in the mouth of the witness," *Esperti v. United States*, 406 F.2d 148, 150 (5th Cir. 1969), the record of these proceedings lacks sufficient support for Carey's assertion that DJ read the jury her testimony from

---

[1] Carey raised the failure-to-actually-refresh argument only once. When the prosecutor first presented the report to DJ, Carey objected by arguing that "[t]here is no indication that she [DJ] ever adopted that as her statement." This did not suffice to preserve the failure-to-actually-refresh argument because Carey's attorney did not raise the argument as the objection's specific ground, and because that basis for an objection does not appear from the context. *See* Fed. R. Evid. 103(a)(1); *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998) ("A loosely formulated and imprecise objection will not preserve error."). The only sufficient objection came later, when Carey's attorney objected by arguing that "[h]e is reading or allowing her to read Tammy Hutchison's statement and then asking leading questions from that."

the report. *See Thompson*, 342 F.2d at 139–40. Instead, the record reflects merely instances where DJ says that she does not know an answer, followed by more questions that eventually elicit one. Accordingly, we must defer to the district judge who determined that DJ rendered admissible testimony.

Carey also argues that the district court erred because it allowed DJ to rely upon a document that DJ did not author, and that contained factual errors. But contrary to Carey's argument, the admissibility of testimony accompanied by a Rule 612 refreshment does not depend upon the source of the writing, the identity of the writing's author, or the truth of the writing's contents, for "[i]t is hornbook law that any writing may be used to refresh the recollection of a witness." *Esperti*, 406 F.2d at 150; *accord Thompson*, 342 F.2d at 139–40; *see* 4 Jack V. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 612.03[3][b] (Joseph M. McLaughlin ed. 2009); 28 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6184 (1993 & Supp. 2009). Even if, as Carey contends, the writing was neither authored by DJ nor completely accurate, these considerations inform only the weight to be accorded by the finder of fact, not the admissibility of DJ's testimony. *See Thompson*, 342 F.2d at 139 ("The reliability or truthfulness of the statement was relevant only to the problem of the weight and credibility to be accorded the witness' testimony.").

Carey exercised his right to ask DJ about her reliance on the report, and to argue to the jury that the reliance rendered her testimony not credible. The jury simply disagreed. Accordingly, we reject Carey's Rule 612 challenges to

5

DJ's testimony.[2]

B.

Second, Carey challenges his conviction by arguing that the prosecutor employed impermissible leading questions during DJ's testimony. Federal Rule of Evidence 611(c) prohibits leading questions "except as may be necessary to develop the witness' testimony." Two exchanges are at issue here. First, Casey objected after the following line of questions:

> Q.    Do you remember the first time that Michael ever touched you? Can you remember the first time?
>
> A.    No, I can't.
>
> Q.    Okay. do you remember talking to Tammy Hutchison?
>
> A.    Yes.
>
> Q.    And do you remember telling Tammy about some --
>
> Mr. Lucas:  Objection, Your Honor. Leading.
>
> Mr. Lacy:    Your Honor, this is a child.
>
> The Court:  Overruled. The objection is overruled.

A similar objection came later:

> Q.    Do you remember whether or not your Uncle Stanley ever played Santa Claus?
>
> Mr. Lucas:  Your Honor, I have to object to leading on this.

---

[2] To the extent that Carey predicates his challenge on a plain-error review of testimony that went without objection, his claim fails for these same reasons.

> The Court: I understand the basis of your objection, but I also acknowledge that here is -- that this is a child and that he is entitled to certain latitude in asking leading questions. So I'll overrule the objection.

With an objection, we review a district court's decision to allow leading questions for an abuse of discretion. *E.g.*, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 762 (5th Cir. 2008). Carey argues that these questions impermissibly led DJ, while the government argues that the circumstances of the testimony—particularly DJ's age and the nature of the crime—justified the leading.

Carey's Rule 611 challenge fails because our circuit has held that a victim-witness's youth and nervousness can satisfy Rule 611's necessity requirement. *See Rotolo v. United States*, 404 F.2d 316, 317 (5th Cir. 1968) (allowing the government to lead a fifteen-year-old witness who appeared "reluctant," "nervous," and "upset"). Here, the indictment concerned a sex crime, the witness was twelve, and the record reveals several times where DJ appeared nervous. For example, DJ testified "I don't want to be here right now," and when asked by the prosecutor whether she "remember[ed] my telling you that you were going to have to talk about some things that you didn't want to," she answered "[y]es." In light of this context and our precedent, Carey fails to demonstrate that the district court abused its discretion in allowing the government to lead DJ's testimony.[3]

## C.

---

[3] Because we reject both of Carey's evidentiary challenges, we do not address Carey's argument concerning the denial of his motion for judgment of acquittal, which assumes that DJ's testimony was erroneously admitted.

Third, Carey challenges his conviction by arguing that the district court allowed a lay witness to testify on a matter that required expert qualifications. Under Federal Rule of Evidence 701, lay witnesses may render opinions only if the opinions are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The challenged testimony comes from Tammy Hutchison, a criminal investigator for the Mississippi Band of Choctaw Indians who specialized in child sexual assaults. On direct examination, Hutchison testified to two matters: (1) the kinds of questions that Hutchison asks of children generally, and (2) the content of Hutchison's conversations with DJ and Hutchison's follow-up investigations. Next, Carey's cross-examination of Hutchison focused on matters surrounding Hutchison's investigative methods, her conversation with DJ, and suggested inconsistencies in DJ's accounts. Then the following exchange between Mr. Lacy (for the government) and Mr. Jupiter (for Carey) occurred:

> Q. Investigator Hutchison, defense counsel has suggested that the child gave prior inconsistent statements. How many child cases have you investigated?
>
> A. Over four or five hundred.
>
> Q. Is it uncommon --
>
> Mr. Jupiter: Your Honor, I object to this line of questioning.
>
> The Court: On what basis?

8

Mr. Jupiter: Well, Your Honor, I mean, she is not going to -- if she is going to testify, I think Mr. Lacy basically is trying to get an expert opinion about her investigating child cases, and we are here about one particular case here.

Mr. Lacy: Your Honor, I am -- I know the difference between Rule 701 and 702.

Q. My question, Ms. Hutchison, is this: Has it been your experience that you don't always get the whole story the first time out?

A. Many times.

Q. Okay. And ultimately --

The Court : The objection is overruled.

Q. And ultimately you get a full accounting of what happened?

A. Yes.

Q. And -- but not usually at first?

A. No.

Q. Okay. Is there any doubt in your mind about which mattress the child and Michael Carey had sex on in her room based on what she told you?[4]

---

[4] As an extension of the Rule 701 argument, Carey asserts that Hutchison vouched for DJ's credibility, rendering her testimony inadmissable. We review this contention for plain error because Carey did not object at trial. *See, e.g.*, *United States v. Binker*, 795 F.2d 1218, 1227–28 (5th Cir. 1986). While impermissibly vouching for a witnesses *may* constitute plain error, it is certainly not *always* plain error. *See United States v. Carter*, 953 F.2d 1449, 1460–61 (5th Cir. 1992) (prosecutorial vouching not plain error). The district court's allowance

A. No, sir.

Q. All right.

Q. I have no further questions of this witness.

With an objection, we review evidentiary rulings for an abuse of discretion. *E.g.*, *United States v. Miranda*, 248 F.3d 434, 440 (5th Cir. 2001). Carey argues that the district court violated Rule 701 when it allowed Hutchison to testify that child abuse victims initially give vague accounts of abuse before providing more complete accounts. The government argues that the testimony came from experience, not necessarily expertise; that Hutchison's lay status was made clear to the jury; that the testimony was a permissible response to the defendant's previous questioning; and that any error was harmless.

While there is an argument to be made that Hutchison was entitled to rely upon her long histories of personal experience without triggering Rule 702 expert requirements, *see Miranda*, 248 F.3d at 441; *United States v. Darland*, 659 F.2d 70, 72 (5th Cir. Unit B Oct. 1981), we need not reach that question because we conclude that Carey opened the door and invited any error that may have occurred. "A defendant may not complain on appeal that he was prejudiced by evidence relating to a subject which he opened up at trial." *United States v. Wilson*, 439 F.2d 1081, 1082 (5th Cir. 1971). Thus, we have often identified circumstances where, because an inquiry during cross-examination calls for rebuttal during redirect, no error can be predicated on the latter. *See United*

---

of this testimony presents no plain error because the context and brevity of Hutchison's comment limited any prejudicial effects, and because the government's presentation of an otherwise strong case, which included both testimony from DJ about each event and evidence from the scene, rendered any error harmless.

*States v. Jimenez*, 509 F.3d 682, 691 (5th Cir. 2007); *United States v. Acosta*, 475 F.3d 677, 683–84 (5th Cir. 2007); *United States v. Maldonado*, 472 F.3d 388, 398 (5th Cir. 2006). This is just such a case, for Carey complains of testimony that came only *after* Carey had pursued an inquiry into Hutchison's investigative experience and *after* Carey had pursued an inquiry into the meaning of DJ's inconsistent accounts. During Carey's cross-examination of Hutchison, Carey's attorney asked Hutchison whether Hutchison "d[id] hundreds of these cases;" whether she "would have known that she [DJ] would have given the history to the doctor and to the nurse;" whether "if a child is not able to give you [Hutchison], for instance, dates . . . you [Hutchison] start with events like Christmas;" and whether the interview with DJ was, in certain respects, like "you [Hutchison] do in all your interviews." In addition, Carey's attorney asked Hutchison about "inconsistent accounts" DJ had given to other persons, and asked Hutchison whether DJ gave Hutchison "any indication that she gave a different account in terms of when this started." Thus, because Carey's decision to pursue these subjects during cross-examination entitled the government to elicit rebuttal evidence, we cannot conclude that the district court erred in admitting Hutchison's testimony on redirect.

## III.

Carey challenges his four life sentences by arguing that the district court committed both procedural and substantive errors.

> Post- *Booker,* we employ a two-step process in reviewing sentences imposed by district courts. First, we determine whether the district court properly interpreted and applied the sentencing guidelines. We review a district court's interpretation and application *de novo.* If we reach the second step of the review process, we consider whether the sentence imposed is reasonable.

11

*United States v. Newsom*, 508 F.3d 731, 733–34 (5th Cir. 2007) (citations omitted).

## A.

In his first challenge to the district court's sentence, Carey argues that the district court made an erroneous guideline calculation. Under the applicable United States Sentencing Guideline, an act of criminal sexual abuse merits a four-level increase if the defendant used force against the victim as described in 18 U.S.C. § 2241(a). U.S.S.G. § 2A3.1(b)(1). Section 2241(a), in turn, proscribes "knowingly caus[ing] another person to engage in a sexual act" by "using force against that other person." 18 U.S.C. § 2241(a).[5] At sentencing, the government argued that Carey triggered the enhancement by choking DJ with her hair during one of the incidents.[6] The choking scared DJ, prevented her from breathing, and lasted for the duration of Carey's intercourse with DJ. The district court applied the enhancement, resulting in a four-level increase in Carey's calculation. Carey now challenges the enhancement by arguing that this kind of force does not fall within § 2241(a) because it occurred during the act of assault itself, and not separately.[7] The government argues that this kind of force

---

[5] Section 2241(a)(2) operates like § 2241(a)(1) to trigger an enhancement if the defendant "knowingly cause[d] another person to engage in a sexual act" by "threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping." 18 U.S.C. § 2241(a)(2).

[6] The government also presented two other possible justifications for the enhancement: (1) Carey's act of locking the bedroom door before intercourse on one occasion, and (2) Carey's relative size advantage. We need not determine whether either of these would justify an enhancement because our disposition of the choking issue is dispositive.

[7] The text of U.S.S.G. § 2A3.1 itself does not supply the use-of-force requirement. Instead, § 2A3.1(b)(1) says only that "[i]f the offense involved conduct described in 18 U.S.C.

does fall within § 2241(a) notwithstanding the fact that it occurred during the act of assault.

Our holdings in *United States v. Lucas*, 157 F.3d 998 (5th Cir. 1998), and *United States v. Simmons*, 470 F.3d 1115 (5th Cir. 2006), foreclose Carey's argument. In *Lucas*, we sought to apply § 2A3.1 by determining whether the defendant had violated § 2241 when he "summoned [the victim] to a relatively secluded location, locked the door so that she could not escape his advances, and pressed her against a table in such a way that she could not leave." 157 F.3d at 1002–03 (footnote call omitted). We then determined that a "defendant uses force within the meaning of § 2241 when he employs restraint sufficient to prevent the victim from escaping the sexual conduct," thereby refusing to exclude the conduct occurring during the assault from the scope of § 2241(a). *Id.* at 1102. Likewise, in *Simmons* we addressed whether an "assault involved 'aggravated sexual abuse', in violation of 18 U.S.C. § 2241(a)." 470 F.3d at 1121. We then followed *Lucas* and held that the defendant's conduct fell within § 2241(a):

> [The defendant] forced her [the victim] to perform oral sex by pulling her head; she was unable to avoid doing so because of "the pressure he had on [her] neck"; and she was unable to escape [the defendant's] penetrating her anally and vaginally because he pinned her between his body and his police vehicle. *See Lucas*, 157 F.3d at 1002 n.9 (defendant's "pressing the victim against a table and thereby blocking her means of egress suffices to constitute force within the meaning of § 2241").

*Id.* at 1121. To follow these precedents, we must hold that Carey's act of choking

---

§ 2241(a) or (b), increase by 4 levels." U.S.S.G. § 2A3.1(b)(1).

DJ fell within § 2241(a) because the nature and context of the conduct is indistinguishable.[8]

## B.

Carey's second challenge to the district court's sentence is for procedural reasonableness. Within-guidelines sentences require an explanation that allows for meaningful appellate review and the perception of fair sentencing. *United States v. Mondragon-Santiago*, 564 F.3d 357, 360 (5th Cir. 2009), *cert. denied*, No. 08-11099, 2009 WL 1849974 (U.S. Oct. 5, 2009). At Carey's sentencing hearing, the district court stated that "the record supports the four-level enhancement," and that "the presentence report will, therefor, be adopted." After Carey objected to the district court's adoption of the presentence report, the district court noted: "Well, the child's testimony, as well as what she told the people after she had been assaulted. I'm basing it on all of that." Before announcing the sentence, the district court stated that "[t]he court has considered the advisory guideline computations and the sentencing factors under 18 United States Code, Section 3553(a)."

With an objection, we evaluate procedural reasonableness by reviewing "the district court's application of the Guidelines *de novo* and its factual findings for clear error." *United States v. Delgado-Martinez*, 564 F.3d 750, 751 (5th Cir. 2009). Carey argues that the district court conducted a procedurally

---

[8] Carey relies on the Second Circuit's decision in *United States v. Volpe*, 224 F.3d 72 (2d Cir. 2000), to support his view that conduct occurring during the act of sexual assault should not trigger the § 2A3.1(b)(1) enhancement. While the Second Circuit might decide this case differently, *see id.* at 77 ("§ 2A3.1(b)(1) appears to be aimed at uses of force to compel the victim's submission to a sexual assault, not at more forceful assaults, especially since the degree of injury to the victim is taken into account separately in § 2A3.1(b)(4)."), our precedent forecloses our reconsideration of the issue.

unreasonable hearing by failing to make findings concerning the disparity factors under 18 U.S.C. § 3553(a). The government argues that the district court did, in fact, examine the § 3553 factors and consider all of Carey's arguments. In this case, Carey's procedural challenge fails because the district court's explanation exceeds that which sufficed in *Rita v. United States*, 551 U.S. 338 (2007), *United States v. Rodriguez*, 523 F.3d 519 (5th Cir. 2008), *United States v. Gomez-Herrera*, 523 F.3d 554 (5th Cir. 2008), and *United States v. Bonilla*, 524 F.3d 647 (5th Cir. 2008). *See Mondragon-Santiago*, 564 F.3d at 362–64.

## C.

In his final challenge to the district court's sentence, Carey argues that the district court rendered a substantively unreasonable sentence. The district court sentenced Carey to what the Guidelines called for: one life sentence for each of Carey's four offenses. Carey cites the interest in "avoid[ing] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and argues that the district court's sentence was unreasonable because analogous defendants in other jurisdictions received lesser sentences. The government responds by arguing that the district court's sentence fell exactly within the Guidelines, and asserts that the circumstances of the case justify the sentence.

Carey's argument for unreasonableness fails for several reasons. "In this circuit, a sentence within the Guidelines range is presumed reasonable on appeal." *Mondragon-Santiago*, 564 F.3d at 360. Moreover, "a reviewing court's concern about unwarranted disparities is at a minimum when a sentence is within the Guidelines range." *United States v. Willingham*, 497 F.3d 541, 545 (5th Cir. 2007); *accord United States v. Fernandez*, 559 F.3d 303, 324 (5th Cir.

2009).  In addition, Carey's argument for national disparity is undermined by the imposition of analogous sentences in other courts.  *See United States v. Mix*, 457 F.3d 906, 909, 911–12 (9th Cir. 2006); *see also United States v. Wright*, 540 F.3d 833, 837 (8th Cir. 2008); *United States v. Brown*, 330 F.3d 1073, 1076 (8th Cir. 2003).  As a result, we do not conclude that the district court imposed an unreasonable sentence.

## IV.

Accordingly, because Carey's challenges to the jury's conviction and the district court's sentence fail, the district court's judgment is AFFIRMED.